VIRGINIA C. OVERTON, Respondent, *v.* THE ST. LOUIS MUTUAL LIFE INSURANCE COMPANY, Appellant.

*Insurance—Life Policy.*—A life policy contained a condition, that in case the insured should die in the known violation of any law of the State, or of the United States, or of any government where he might be, the policy should be void." The insured was killed in a personal rencontre with W. The court instructed the jury, that if the insured was killed in the lawful defence of his person when there was reasonable cause for him to apprehend a design on the part of W. to do him a great personal injury, and also to apprehend immediate danger of such design being accomplished, then the insured did not come to his death in the known violation of the laws of the land. *Held,* that, under the statute of this State, if the insured had killed W., it would have shown a case of justifiable homicide, and not a violation of the law within the meaning of the policy.—Harper's Adm'r v. Phœnix Ins Co., 19 Mo. 506.

*Appeal from St. Louis Court of Common Pleas.*

*Krum & Decker,* for appellant.

I. The court erred in giving the respondent's instructions. As a deduction of law it is objectionable, because it assumes

the very point in issue, viz., that deceased shot at Williams in the "lawful" defence of his person. What is ".lawful" self-defence? This is the very question to be determined by the facts.

If the court had found the facts as they are indisputably proved by all the witnesses, it would appear that deceased provoked a quarrel by false and dishonorable accusations, and continues in the quarrel, and then shoots in "lawful defence of his person."—1 Hale, 480; Foster, 273, cited in Harper v. Phœnix Ins. Co., 19 Mo. 512; State v. Gunn, 37 Mo. 467; 1 Rusell, Cr. 527; R. C. 1855, pp. 559–60, for definition of justifiable homicide.

II. The case at bar is distinguishable from Harper v. Phœnix Ins. Co., 19 Mo. 512. In that case, "Harper would have been justified had he killed Coryell." "Harper had retired from the conflict." The facts of that case showed clearly that Coryell was guilty of a crime. The facts here found show that Williams was innocent; that he could not be charged with the commission of a crime; that Overton was in the act of committing a crime on Williams; that Overton had not retired from the conflict; that Williams acted on the defensive.

*C. D. Drake,* for respondent.

I. The policy was not forfeited unless the deceased, in the rencontre in which he came to his death, was guilty of a felony—Harper's Adm'r v. Phœnix Ins. Co., 19 Mo. 506.

II. The policy was not forfeited, because the deceased in the rencontre acted in self-defence; and the question whether he so acted was properly submitted under the instruction given by the court at the plaintiff's request.

WAGNER, Judge, delivered the opinion of the court.

This was an action to recover the amount of a policy of insurance issued by the appellant on the life of Dudley H. Overton, late husband of the respondent. The policy contained this clause, "that in case the said Dudley H. Overton

should die in the known violation of any law of this State or of the United States, or of any government where he may be, this policy shall be void, null, and of no effect."

The sole question in controversy is as to whether Overton came to his death under circumstances which worked a forfeiture of the policy on his life within the provisions of the foregoing clause.

The evidence shows that Overton came to his death by a wound received from a pistol-ball fired by one John S. Williams, in a personal rencontre which took place between them at Fulton, Missouri, on the 14th of February, 1862. The evidence is conflicting and contradictory as to which of the parties commenced the rencontre that resulted in Overton's death, though the preponderance is that Williams drew and cocked his pistol before Overton fired. The trial was before the court, a jury being waived, and at the instance of the respondent the court declared the law to be that "if the deceased Dudley H. Overton came to his death from a wound received by him in a rencontre between him and John S. Williams, in which rencontre pistols loaded with powder and ball were fired by each party at the other; and if the said Overton's firing of his pistol was done in lawful defence of his person when there was reasonable cause for him to apprehend a design on the part of said Williams to do him a great personal injury, and also to apprehend immediate danger of such design being accomplished, then said Overton did not come to his death in known violation of the laws of the land, and the plaintiff is entitled to recover."

The court refused instructions asked for appellant, and then found for the respondent.

The instruction given for the respondent, though open to some criticism, is substantially correct, and asserts the principle that to exonerate Overton from criminal agency, or to preclude a forfeiture of the policy, it must be shown by the evidence that when he fired his pistol he had reasonable cause to apprehend a design on the part of Williams to do him a great personal injury, and also that he apprehended

immediate danger of such design being accomplished. A killing under such circumstances, under the statute of this State, would be justifiable homicide, and not a violation of the law within the meaning of the policy. It was the province of the court to weigh the evidence, and having found for the respondent, acting under a view of the law wholly unexceptionable, we have no right or authority to interfere. The facts in this case are very similar to those in Harper's Adm'r v. Phœnix Ins. Co., 19 Mo. 506, and the principles identically the same ; and the reasoning in the opinion of that case applies with equal force in this case.

The court below, therefore, committed no error according to the law as heretofore laid down by this court, and its judgment must be affirmed. The other judges concur.